**UNITED STATES of America,**
**Plaintiff,**

v.

**Nicholas F. FALGIONE, Defendant.**

**No. 2:04CV1494.**

United States District Court,
W.D. Pennsylvania.

Sept. 29, 2005.

Paul E. Skirtich, Pittsburgh, PA, for Plaintiff.

Bernard M. Schneider, Brucker Schneider & Porter, William G. Brucker, Brucker Olszewski, Schneider & Porter, Pittsburgh, PA, for Defendant.

## MEMORANDUM AND ORDER OF COURT

CERCONE, District Judge.

Presently before the court is a petition by the United States of America to enforce an Internal Revenue Service ("IRS" or "Service") summons issued to respondent Nicholas F. Falgione. For the reasons set forth below, the petition will be granted.

The United States commenced this proceeding pursuant to 26 U.S.C. §§ 7402(b) and 7604(a) seeking judicial enforcement of a summons issued on behalf of the IRS by Paul Nahas—a revenue agent for the Service employed in its Tax Exempt and Government Entities Exempt Organizations Department. Agent Nahas is conducting an investigation into the liability of the Municipal Authority of Westmoreland County ("MAWC") for penalties under 26 U.S.C. § 6700 in conjunction with MAWC Municipal Service Revenue Bonds, Series 1995 A and B, issued on July 27, 1995, in the amount of $21,562,590.52 (the "Bonds"). Declaration of Agent Nahas at ¶ 2. Agent Nahas issued the summons and personally served it on respondent on January 14, 2004. *Id.* at ¶ 4. Notice of the summons was personally delivered by Agent Nahas to MAWC on the same date as required by 26 U.S.C. § 7609(a). *Id.* at ¶ 5. The summons directs defendant to appear before Agent Nahas and testify and produce for examination books, records and other documents pertaining to the issuance of the Bonds.

On February 12, 2004, respondent appeared as requested in the summons but refused to comply with the summons by testifying or producing the referenced information. The instant proceeding followed.

After receiving the petition an order was entered directing respondent to appear before the court and show cause why he should not be compelled to comply with the summons. Respondent filed an "answer and defense to petition" as well as a brief in opposition to the petition. A show cause hearing was held on March 10, 2005, wherein respondent appeared and submitted documents and testimony in support of his position that the summons should not be enforced because the tax liability in question has been resolved by a prior settlement agreement. The government maintains that all prerequisites for enforcement have been satisfied and respondent lacks standing to raise the settlement agreement as a bar to enforcing the summons.

■ The authority to issue a summons is given to the IRS by 26 U.S.C. § 7602. Jurisdiction for judicial enforcement of an IRS summons is created by 26 U.S.C.

§ 7402(b). "Summons enforcement proceedings are designed to be summary in nature, and their 'sole purpose ... is to ensure that the IRS has issued the summons for a proper purpose and in good faith.'" *United States v. Rockwell International*, 897 F.2d 1255, 1262 (3d Cir.1990) (quoting *United States v. Barrett*, 837 F.2d 1341, 1349 (5th Cir.1988)) (*en banc*) (*per curiam*), *cert. denied*, 492 U.S. 926, 109 S.Ct. 3264, 106 L.Ed.2d 609 (1989). "The purpose of the good-faith inquiry is to determine whether the agency is honestly pursuing the goals of § 7602," which "may be summarized as (1) ascertaining the correctness of a return, (2) making a return where none has been made, (3) determining tax liability, and (4) collecting taxes." *United States v. Garden State National Bank*, 607 F.2d 61, 68 (3d Cir.1979). The Service is required to exercise its summons authority at all times in pursuit of these congressionally authorized purposes and a summary proceeding provides a means to prevent abuse of that congressional authority or the court's process. *Id.* at 68–69 (citing *United States v. LaSalle National Bank*, 437 U.S. 298, 318 n. 20, 98 S.Ct. 2357, 57 L.Ed.2d 221 (1978)).

■ The procedure to be followed in an enforcement proceeding initiated pursuant to 26 U.S.C. § 7602 is well established. The government is required to make a prima facia showing under *United States v. Powell*, 379 U.S. 48, 85 S.Ct. 248, 13 L.Ed.2d 112 (1964), before a summons can be judicially enforced. *Rockwell International*, 897 F.2d at 1262. The elements of this showing are:

1) the investigation is being conducted for a legitimate purpose;

2) the material sought is relevant to the legitimate purpose of the investigation;

3) the information is not yet in the possession of the Service; and

4) the proper administrative steps have been followed.

*Garden State*, 607 F.2d at 67. This showing may be satisfied by an affidavit from the agent who issued the summons and is seeking enforcement. *Id.* The initial satisfaction of the four elements creates a presumption of good faith. *Garden State*, 607 F.2d at 67 (citing *LaSalle*).

The taxpayer or subject of the summons may then "challenge the summons on any appropriate ground." *Rockwell International*, 897 F.2d at 1262 (quoting *Powell*, 379 U.S. at 58, 85 S.Ct. 248 & *Reisman v. Caplin*, 375 U.S. 440, 449, 84 S.Ct. 508, 11 L.Ed.2d 459 (1964)). "The teaching of the subsequent decisions [following *Powell*] is that an 'appropriate ground' for challenging the summons exists when the taxpayer disproves one of the four elements of the government's *Powell* showing, or otherwise demonstrates that enforcement of the summons will result in an abuse of the court's process." *Rockwell International*, 897 F.2d at 1262 (citations omitted).

Respondent contends that the investigation into the tax liability of MAWC cannot have a legitimate purpose because its liability for any penalty arising from the issuance of the Bonds has been conclusively resolved pursuant to a settlement agreement. That settlement agreement was entered in 2000 between the underwriter of the 1995 bonds, RRZ Public Markets, Inc. (subsequently renamed Omega Private Management Limited), and the IRS. Respondent Falgione was an employee of RRZ Public Markets, Inc., when the Bonds were issued. Falgione asserts that provisions in paragraphs 8 and 9 of the agreement resolve the excludability of interest for the 1995 bonds and MAWC's liability for a § 6700 penalty. Consequently, Falgione maintains that the investigation by the Service cannot now have a legitimate purpose and the petition should therefore

be denied, with costs and fees being awarded in his favor.

The Service contends respondent lacks standing to challenge the legitimacy of the investigation into MAWC's liability for a penalty arising from the issuance of the Bonds because it, and not respondent, is the taxpayer being investigated and the taxpayer has not sought to intervene, attempted to quash the summons under § 7609 or asserted in any manner that the investigation is being conducted for an improper purpose. In fact, Agent Nahas represents that the taxpayer has cooperated with the investigation by permitting its employees to appear and give testimony.[1] Consequently, the Service maintains that respondent has merely raised a disagreement concerning the proper interpretation of a settlement agreement—to which he was not a party—and further maintains that barring enforcement of the summons at this stage of the proceedings on that ground would be tantamount to a ruling on the merits of the taxpayer's liability, a matter beyond the scope of the proceeding before the court.

Agent Nahas' affidavit satisfies the government's initial burden of making a prima facia showing under *Powell*. It establishes that Agent Nahas is conducting an investigation into the potential liability of MAWC for a penalty under 26 U.S.C. § 6700 in connection with the Bonds, the summons has been issued to an individual who played a key role in structuring and bringing about the issuance of the Bonds, Falgione has additional information about the creation of the underlying documents and the interactions of those involved that is not currently in the possession of the Ser-

vice, and all proper steps for issuing a summons have been followed.

Falgione challenges only the first element of the government's prima facia showing: the legitimate purpose of the investigation. He asserts that the investigation into MAWC's penalty liability cannot be legitimate because its liability has been conclusively resolved through the settlement agreement (and according to Agent Nahas' affidavit, MAWC also has taken the position that the settlement bars its § 6700 penalty liability). And indeed, Falgione has advanced a colorable showing that the agreement was intended to resolve all tax liability of MAWC with regard to the issuance of the 1995 Bonds. But Falgione's position misconstrues the nature of the evidence or type of circumstances needed to overcome the government's good faith showing under *Powell*.

"The cases decided since *Powell* have shown that the requirement of legitimate purpose means nothing more than that the government's summons must be issued in good faith pursuant to one of the powers granted under 26 U.S.C. § 7602." *Rockwell International*, 897 F.2d at 1262. The burden of negating a proper civil purpose is on the taxpayer. *Garden State*, 607 F.2d at 70 n. 15. This burden is indeed a "heavy" one. *LaSalle*, 437 U.S. at 316, 98 S.Ct. 2357. Demonstrations of the lack of a legitimate purpose, and thus the specter of bad faith, include the institutional abandonment of a civil collection purpose and use of a summons solely to gather information for criminal prosecution. *LaSalle*, 437 at 311–13, 98 S.Ct. 2357; *Garden State*, 607 F.2d at 69. They may also be made by showing that the investigation is being conducted solely to

1. Specifically, Agent Nahas represents that MAWC's Resident and Business managers have indicated through their testimony before Agent Nahas that respondent and another em-

ployee of RRZ Public Markets played key roles in recommending MAWC issue the Bonds. *Id*. at ¶ 25.

harass the taxpayer or to put pressure on him or her to settle a collateral dispute. *United States v. Bisceglia,* 420 U.S. 141, 146–47, 95 S.Ct. 915, 43 L.Ed.2d 88 (1975); *Rockwell International,* 897 F.2d at 1262. But where the Service has not abandoned its institutional purpose of civil enforcement of the Code and no referral or recommendation for criminal prosecution has been made, the summons carries a presumption of validity and is "virtually unassailable." *Garden State,* 607 F.2d at 69–70 (citing *United States v. Genser,* 595 F.2d 146, 151 (3d Cir.1979) and *United States v. Serubo,* 604 F.2d 807, 811–12 (3d Cir. 1979)).

■ Falgione has identified nothing more than a genuine dispute as to whether a prior settlement conclusively resolves MAWC's penalty liability under 26 U.S.C. § 6700. While he takes the position that the agreement was to be comprehensive to all aspects of the issuance of the Bonds, the Service maintains that a § 6700 examination is separate and distinct from a tax exempt bond examination and thus the settlement is limited by context to controlling the effect the defeasance escrows have on the tax exempt status of the Bonds. Of course, to definitely resolve this dispute the Service will have to determine that the requirements for a § 6700 penalty are present and assess the penalty against MAWC, and MAWC will then have to challenge that assessment before the appropriate tribunal by advancing the settlement as an affirmative defense. Whatever else can be said about this dispute between the Service and MAWC, it is clear that the Service has not abandoned its purpose of investigating civil tax collection as authorized by § 7602 either at the institutional or case-specific levels, and thus the Service is entitled to summary enforcement of the summons. *Compare Rockwell International,* 897 F.2d at 1263 ("Indeed, the

cases discuss not what the actual purpose is, but whether the summons was issued in good faith pursuant to a legitimate investigation—that is, an investigation authorized by section 7602."); *Garden State,* 607 F.2d at 69–70 (where no recommendation for criminal prosecution has been made, the strong presumption of validity may be overcome only by demonstrating that the summons was issued at the request of a United States Attorney or that the agent has merely delayed his recommendation for prosecution at the request of a superior or similar evidence of misuse of the congressionally authorized process). Accordingly, the Service is entitled to enforcement of the summons.

### ORDER

AND NOW, for the reasons set forth in the above memorandum, IT IS ORDERED that the Petition to Enforce Internal Revenue Summons (Doc. No. 1), be, and the same hereby is, granted. Respondent Falgione shall comply with the summons and each and every requirement thereof before Revenue Agent Paul Nahas or any other proper officer or employee of the Internal Revenue Service at such time and place as may be fixed by Agent Nahas or any other proper officer or employee of the Internal Revenue Service; and

IT FURTHER IS ORDERED that Respondent's motion for discovery (Doc. No. 12) be, and the same hereby is, denied as moot.

The Clerk shall close this case.