Order of Detention and Surrender is stayed.

SO ORDERED.

Charles M. Flesch, Trial Atty., Tax Div., U.S. Dept. of Justice, Washington, D.C., Louis J. Bizzarri, Asst. U.S. Atty., U.S. Atty.'s Office, Camden, N.J., for petitioners.

Gary D. Wodlinger, William M. Gilson, Lipman, Antonelli, Batt & Dunlap, Vineland, N.J., for respondent.

**UNITED STATES of America; Joseph Clarence West, Revenue Agent of the Internal Revenue Service, Petitioners,**

v.

**Frank H. WHEATON, Jr., Respondent.**

Civ. A. No. 91–5094.

United States District Court, D. New Jersey.

May 12, 1992.

## OPINION

BROTMAN, District Judge.

An evidentiary hearing was held on March 31, 1992 and April 10, 1992 in this Internal Revenue Service ("IRS") summons enforcement matter. Petitioners, the United States and Joseph West, Revenue Agent of the IRS are investigating whether respondent, Frank Wheaton, Jr. ("Wheaton") has any federal income tax liabilities for the years 1981 through 1986 arising from his alleged control and/or ownership of three foreign corporations known as Tartan Investments, Inc., a Panamanian corporation ("Tartan"), Caribe Bahamas, Ltd., a Bahamian corporation ("Caribe Bahamas"), and Commonwealth Chemical Company, a Bahamian Corporation ("Commonwealth Chemical").

## I. FACTS AND PROCEDURE

On June 1, 1989, Wheaton was served with three separate IRS summonses directing him, as the custodian of records for Tartan, Caribe Bahamas and Commonwealth Chemical, to produce various documents of each of the three corporations.[1] On June 20, 1989, Wheaton appeared at the time and place required by the summonses

---

1. The IRS seeks "[a]ll books, papers, records and any other data that is in [Wheaton's] possession ... or control, which is relevant to" Tartan, Caribe Bahamas or Commonwealth Chemical "including but not limited to: 1) financial statements; 2) workpapers used in preparing financial statements; 3) bank statements and canceled checks; 4) duplicate deposit slips; 5) savings account passbooks; 6) trust account statements and supporting documents; 7) custodial account statements and supporting documents; 8) information on other invested funds; 9) records of all loans and payments; 10) purchase invoices covering acquisition of capital items; 11) records covering purchases and sales of real estate or other property; 12) stock certificates and stock transfer book; 13) all books and records concerning income, expenses and deductions; and 14) all books of minutes and meetings."

but did not provide any of the documents sought on the grounds that he was not in control or possession of the documents.

On November 19, 1991 petitioners filed the present action to enforce the three IRS summonses. An Order to Show Cause hearing was scheduled for March 31, 1992 at which time Wheaton presented two affidavits establishing a material fact issue as to whether he controlled or possessed the documents sought.

In one affidavit, I.E. Collie, Trust Manager at the Royal Bank of Scotland ("Royal Bank") located in Nassau, Bahamas states that the bank possesses an unspecified number of Tartan's and Caribe Bahamas' books and financial records. He states that although Wheaton requested copies of the books and financial records from the Royal Bank, the Royal Bank did not disclose any such information since Wheaton is not the present owner of record of these corporations.

In the other affidavit, Raymond Rogers, a former owner of Commonwealth Chemical, states that he started the company with his brother, Andrew Rogers. He states that he and his brother owned half of all the corporate shares of Commonwealth Chemical and that Caribe Bahamas owned the other half of the corporate shares. Moreover, Rogers maintains that Wheaton was not a shareholder in Commonwealth Chemical and had no access to any of its financial records.

Based on these affidavits, the court ordered that an evidentiary hearing be held for determining whether the three IRS summonses should be enforced against Wheaton.

## II. DISCUSSION

The court has jurisdiction to enforce an IRS summons pursuant to 26 U.S.C. § 7402(b). Summons enforcement proceedings are summary in nature and "their sole purpose is to ensure that the IRS has issued the summons for a proper purpose and in good faith." *United States v. Rockwell International,* 897 F.2d 1255, 1261 (3d Cir.1990).

Petitioners must meet the standards of good faith set out by the Supreme Court in *United States v. Powell,* 379 U.S. 48, 85 S.Ct. 248, 13 L.Ed.2d 112 (1964) in order to enforce an IRS summons. That is, "that the investigation will be conducted pursuant to a legitimate purpose, that the inquiry may be relevant to the purpose, that the information sought is not already within the [IRS] Commissioner's possession and that the administrative steps required by the [IRS] code have been followed." *Powell,* 85 S.Ct. at 255; *United States v. McCoy,* 954 F.2d 1000, 1004 (5th Cir.1992); *Rockwell* at 1262; *United States v. Lawn Builders of New England, Inc.,* 856 F.2d 388, 391 (1st Cir.1988); *United States v. Sancetta,* 788 F.2d 67, 71 (2d Cir.1986) *United States v. Huckaby,* 776 F.2d 564, 567 (5th Cir.1985); *United States v. Garden State National Bank,* 607 F.2d 61, 67–68 (3d Cir.1979); *see also PAA Management, Ltd. v. United States,* 962 F.2d 212, 215–16 (2d Cir.1992); *United States v. Abrahams,* 905 F.2d 1276 (9th Cir.1990). Assertions by affidavit of the investigative agent who is seeking enforcement that the *Powell* requirements are satisfied are sufficient to establish a prima facie case. *Rockwell* at 1262; *Lawn Builders* at 392; *Garden State* at 68.

Petitioners have established a prima facie case. West testified that he is a IRS Revenue Agent assigned to investigating Wheaton's federal income tax liabilities for the years ending December 31, 1981 through December 31, 1986. West declared under penalty of perjury that since the IRS's investigation of Wheaton revealed that he operated Tartan, Caribe and Commonwealth Chemical from his place of business in New Jersey, the information sought by the three IRS summonses is relevant to the IRS investigation of Wheaton in that it may shed light on his correct tax liabilities for the year 1981 through 1986 inclusive. *See United States v. Saunders,* 621 F.Supp. 745 (D.C.Ga.1985) (test for determining whether summoned documents are relevant to ongoing tax investigation is whether summons seeks information which might throw light upon correctness of taxpayer's return); *accord*

*Rockwell* at 1263; *Spine v. United States,* 670 F.Supp. 217 (S.D.Ohio 1987). In addition, West also testified that the information sought by each summons is not already in the possession of the IRS, except for one financial sheet for 1984 for Commonwealth Chemical and one bank deposit slip for Tartan, and that all procedural steps required by the Internal Revenue Code have been followed.[2]

Once the *Powell* factors have been met, the burden shifts to the taxpayer to demonstrate that he lacked possession and control of the summoned documents and that enforcement of the summonses would represent an abuse of the court's process. *Powell,* 85 S.Ct. at 255; *Rockwell* at 1262; *United States v. Millstone Enterprises, Inc.,* 864 F.2d 21, 23 (3d Cir.1988); *United States v. Barth,* 745 F.2d 184, 187 (2d Cir.1984); *see also Callahan v. Schultz,* 783 F.2d 1543 (11th Cir.1986). "[T]he party resisting enforcement bears the burden of producing credible evidence that he does not possess or control the documents sought." *Huckaby* at 567; *see Abrahams* at 1280 (once the prima facie case is made, a heavy burden falls upon the taxpayer to disprove the petitioners assertions).

The court must determine whether Frank Wheaton has produced credible evidence that he did not own or operate Tartan, Caribe Bahamas and/or Commonwealth Chemical and therefore does not control or possess the requested documents or copies thereof for the years 1981 through 1986.

#### a) Tartan

Edna Mae Nicke, Wheaton's Executive Secretary at Wheaton Industries ("Wheaton Industries") in Millville, NJ from August, 1969 until December, 1990[3] testified at the evidentiary hearing. Nicke stated that she was aware of Tartan from 1981 to 1990 through the telephone calls she placed for Wheaton regarding Tartan to the Royal Bank. Wheaton submitted an affidavit by I.E. Collie that stated that the Royal Bank possessed an unspecified number of Tartan's books and financial records.

In addition, Nicke testified that Wheaton had her prepare a letter, back-dated three to five years, to the Royal Bank for his signature permitting Peter Gottschalk, a Brazilian, to have access to Tartan's accounts and establishing Gottschalk's ownership of Tartan. According to Nicke, she was required to prepare this letter after the IRS investigation of Wheaton had begun. Nicke stated that a copy of this letter was kept at Wheaton Industries in a fire-resistant file in Millville, NJ. The file was moved in August, 1991 to 1122 High Street, Millville, NJ, the site of Wheaton's present office.

Wheaton presented no evidence to refute Nicke's assertions regarding Tartan. Having presented no evidence denying that he owned and operated Tartan and that he possessed and controlled the requested documents, the court holds that Wheaton must comply with the IRS summons relating to Tartan.

#### b) Caribe Bahamas

Nicke stated that in 1984, Wheaton purchased H.M. Rich & Sons, a suncare products company in the Bahamas for $181,000.00 and changed the name to Caribe Bahamas. David Miller, Chief Pilot for Wheaton Industries for the last 11 years and an employee for the last 13 years, testified that Wheaton informed him that he purchased H.M. Rich & Sons and that he changed the name to Caribe Bahamas. Miller also stated that Wheaton made trips to a Bahamian bank to obtain money to pay the builder of the Caribe Bahamas plant and that Wheaton had equipment delivered to the plant in the Bahamas for manufacturing suncare products and perfumes.

Don Ciancarelli, currently Manager of Environmental Affairs for Wheaton Industries and an employee since 1983, testified that from March, 1985 until June, 1990, he worked with Wheaton on setting up the

---

**2.** Defendants admit that the *Powell* good faith standards have been met. *See* Response to Petition to Enforce Internal Revenue Summons at 14, 17 and 18.

**3.** Wheaton was the Chief Executive Officer at Wheaton Industries during this time period.

manufacturing operation of Caribe Bahamas and developing the Caribe Bahamas products in the Bahamas. Ciancarelli stated that he would make recommendations on what equipment needed to be purchased for Wheaton's approval. Ciancarelli also testified that he managed the company for several months at which time he reported to Wheaton.

Nicke also testified that copies of all correspondence she typed regarding Caribe Bahamas, including a cover letter regarding the purchase, was kept at Wheaton Industries in a fire-resistant file in Millville, NJ. The file was moved in August, 1991 to 1122 High Street, Millville, NJ, the site of Wheaton's present office. Miller also testified that while in the Bahamas, Wheaton possessed some financial documents regarding Caribe Bahamas. In addition, Ciancarelli testified that he gave Wheaton documents regarding Caribe Bahamas' sales records and that Wheaton received documents regarding Caribe Bahamas' yearly financial status which was prepared by auditors.

Ciancarelli stated that Caribe Bahamas would purchase it plastic bottles and caps for its products from Wheaton Plastics ("Wheaton Plastics") in Mays Landing, NJ. Ciancarelli and Miller both testified that Caribe Bahamas products were distributed in the United States by a company Wheaton partly owned in Melbourne, Florida called Caribe Marketing a/k/a Caribe Suncare Products. *See* Defendant's Exhibit D–1. Wheaton argues that since he is an owner of the company that ultimately sold Caribe Bahamas' products in the United States, he had an interest in the manner in which Caribe Bahamas' products were manufactured. Moreover, Walter Morton, a former Vice–President and General Manager of Wheaton Glass ("Wheaton Glass") in Millville, NJ and a former Sales Manager of Wheaton Aerosol ("Wheaton Aerosol") in Mays Landing, NJ, testified that it was common practice for Wheaton Industries and its subsidiaries and affiliates to construct plants and provide technical assistance with glass and plastic design, handling and packaging *for its customers.*

Although this may be true, Wheaton has not presented evidence contradicting the testimony of Nicke and Miller that he owned Caribe Bahamas and of Ciancarelli that he actively operated the company, or their testimony that he possessed Caribe Bahamas' documents. Ciancarelli did testify that Gottschalk informed him that he had an ownership interest in Caribe Bahamas but this testimony does not refute the testimony that Wheaton was also an owner and operator of Caribe Bahamas.

Daniel Replogle, Treasurer of Wheaton Industries since 1980 and an employee for 15 years, testified on behalf of Wheaton. He stated that a November 1, 1982 Wheaton Industries check in the amount of $181,000.00 payable to the order of Heritage Bank was deposited in Wheaton's account and then this amount was transferred electronically to Michael and Julia Rich's account in their Florida bank. *See* Defendant's Exhibit D–4 and D–5. Thereafter, Michael Rich endorsed a April 12, 1983 check in the amount of $181,000.00 made payable to him over to Wheaton. *See* Defendant's Exhibit D–6. According to Replogle, the $181,000.00 originated from a company named Dorchester Shipyards ("Dorchester") in which Wheaton was a majority shareholder. The money was given to Wheaton Industries by Dorchester to invest with other money in a lump sum and eventually ended up back with Dorchester on May 5, 1983 when Wheaton endorsed the April 12, 1983 check over to Dorchester. *See* Defendant's Exhibit D–7.

Even though Nicke testified that Wheaton purchased H.M. Rich & Sons for the same amount of $181,000.00, Replogle never directly refuted the testimony by Nicke, Miller and Ciancarelli that Wheaton owned and/or actively operated Caribe Bahamas or their testimony that he possessed documents regarding Caribe Bahamas. Replogle did not even know why the $181,000.00 was transferred to Michael and Julia Rich from Wheaton and then later returned to Wheaton. The court concludes that Wheaton has not satisfied his heavy burden demonstrating that he does not possess or control the Caribe Bahamas' documents that the petitioners seek.

### c) Commonwealth Chemical

Nicke testified that Wheaton purchased H.M. Rich & Sons and changed the name to Caribe Bahamas. Miller also testified that Wheaton informed him that he owned Caribe Bahamas. Wheaton submitted an affidavit by Raymond Rogers that stated that one-half of Commonwealth Chemical's shares were owned by Caribe Bahamas. Ciancarelli testified that, in 1986, he and employees of Caribe Bahamas removed equipment from Commonwealth Chemical's plant because the business was no longer operating.

Moreover, Miller stated that Wheaton informed him that he was half owner of Commonwealth Chemical. In addition, Nicke testified that Wheaton maintained a Commonwealth Chemical file as part of his Caribe Bahamas file in Millville, NJ.

Wheaton presented no evidence refuting these assertions. The court will also require Wheaton to comply with petitioners summons relating to Commonwealth Chemical.

### III. CONCLUSION

For the foregoing reasons, the court orders Wheaton to comply with all three of the IRS summonses.