UNITED STATES of America

v.

OMT SUPERMARKET, INC.

UNITED STATES of America

v.

MIDDLETOWN SUPERMARKET, INC.

No. CIV.A. 97–6535, CIV.A. 97–6536.

United States District Court, E.D. Pennsylvania.

Dec. 5, 1997.

As amended Jan. 11, 1998.

---

Charles M. Flesch, Tax Div. of U.S. Dept. of Justice, Washington, DC, for Plaintiff.

James A. Backstrom, Phildelphia, PA, for Defendant.

## *MEMORANDUM*

NEWCOMER, District Judge.

Presently before this Court are the United States' Complaints to Enforce Internal Revenue Summonses in *United States v. OMT Supermarket, Inc.*, 995 F.Supp. 526 and *United States v. Middletown Supermarket, Inc.*, Civil Action No. 97–6536, 1997 WL 837976, —— F.Supp. ——, defendants OMT Supermarket, Inc.'s ("OMT") and Middletown Supermarket, Inc.'s ("MSI") Answer and Motion to Dismiss Complaints to Enforce Internal Revenue Summonses, and the United States' response thereto. For the following reasons, this Court will deny defendants' Motion to Dismiss and enforce the summonses at issue.

### I. Introduction

The Internal Revenue Service ("IRS"), through Revenue Agent Ken Kelly, is currently examining the federal tax liabilities of OMT, MSI, and Eric and Joan Steinberg (collectively "the taxpayers").[1] (Kelly Decls.

---

**1.** Eric Steinberg is deceased, and was the president and majority shareholder of OMT and MSI. Upon information and belief, the United States avers that Joan Steinberg has succeeded to Eric Steinberg's interest in OMT and MSI. Joan Steinberg is the widow of Eric Steinberg. Defen-

¶¶ 1, 2; Compls. ¶¶ 7). During the course of an investigation, the IRS ascertained that the taxpayers had unreported income for the tax years 1990 through 1995 as a result of the fraudulent use and redemption of manufacturer's cents-off coupons. (Kelly Decls. ¶ 5; Compls. ¶ 10). Thus, the purpose of the IRS examination is to determine the taxpayers' correct taxable income for the tax years 1990 through 1995.[2]

Pursuant to the examination of the taxpayers and in accordance with §§ 7602 and 7603 of the Internal Revenue Code ("IRC"), on July 16, 1997, Revenue Agent Kelly issued four IRS summonses to OMT, MSI and Eric and Joan Steinberg. (Kelly Decls. ¶ 6; Compls. ¶ 11). Two of the summonses, one issued in connection with OMT and the other issued in connection with Eric and Joan Steinberg, seek the same information and documents from OMT. The two other summonses, one issued in connection with MSI and the other issued in connection with Eric and Joan Steinberg, seek the same information and documents from MSI. (Kelly Decls. ¶¶ 6; Compls. ¶ 11).[3] Revenue Agent Kelly avers that the information, and books, papers, records, and data sought by the summonses are not already in the possession of the IRS; Kelly also asserts that all administrative procedural steps required by the IRC have been followed. (Kelly Decls. ¶¶ 9, 10). The summonses were personally served on each corporation on July 17, 1997. (Kelly Decls. ¶ 6; Compls. ¶ 11).

On August 12, 1997, OMT and MSI, by letter from their counsel, declined to comply with the summonses, claiming that Federal Rule of Criminal Procedure 6(e) prohibited disclosure of the information sought and that 26 U.S.C. § 7602 prohibits use of administrative summonses when a Department of Justice referral is in effect. Thus, on August 13, 1997, OMT and MSI failed to comply with the IRS summonses and that failure continues to date. (Kelly Decls. ¶ 7; Compls. ¶ 12).

On October 22, 1997, the United States filed a Complaint against OMT (Civil Action No. 97–6535) and a separate Complaint against MSI (Civil Action No. 97–6536) in this Court seeking orders enforcing the four IRS summonses. In these Complaints, the United States prays for the following relief: (1) an order directing defendants to show cause, if any, why it should not comply with the IRS summonses; (2) an order directing OMT and MSI to obey the summonses served upon it and each and every requirement therefore, including allowing the books and records identified in the summonses to be copied, at such time and place as may be fixed by Revenue Agent Kelly or any other office of the IRS; (3) that the United States recover its costs in bringing and maintaining this proceeding; and (4) any other relief that this Court deems just and proper.

On October 28, 1997, this Court entered Orders in both Civil Action No. 97–6535 and Civil Action No. 97–6536, directing OMT and MSI to show cause, if any, why it should not comply with and obey the summonses served upon it. On this same day, the Court ordered these actions consolidated for the purposes of the Order to Show Cause Hearing.

On November 21, 1997, OMT and MSI served a document entitled "Answer and Motion to Dismiss Complaints to Enforce Internal Revenue Summonses."[4] However, OMT and MSI failed to submit an affidavit in response to the Complaints and Declarations of Revenue Agent Kelly as ordered by this Court and as required by the case law. As will be explained below, this failure is a fatal defect inasmuch as there is no proper evidentiary basis to support the opposition to enforcement of the summonses or to support the motion to dismiss.

In their Answer, as well as their Motion which incorporates the averments of the Answer, OMT and MSI assert general deni-

---

dants, in their Answers, do not admit or deny that Joan Steinberg has succeeded to Eric's interest in OMT and MSI.

2. According to Revenue Agent Kelly's declaration, because OMT and MSI are subchapter S corporations, their taxable income is attributed to their shareholders. (Kelly Decls. ¶ 3).

3. The summonses request the taxpayers to produce numerous books, papers, records, data and information that may shed light on the taxpayers' correct tax liabilities for the tax years set forth above. (Kelly Decls. ¶¶ 8,9; Compls. ¶¶ 13, 14).

4. Defendants also served a motion for leave to file their Answer and Motion under seal. The Court granted this Motion.

als, or state that they lack sufficient information regarding the sworn statements of the Complaints, and make affirmative averments regarding the issuance of grand jury subpoenas. Defendants, in their Answer and Motion, essentially make three arguments as to why the summonses should not be enforced. All three of these arguments are based on a prior grand jury proceeding and a prior civil proceeding in this District.

In their Answer and Motion, defendants contend that, on May 6, 1996, a federal grand jury in this District caused subpoenas duces tecum to issue to the Custodian of Records for OMT and MSI.[5] Also on May 6, 1996, a grand jury subpoena calling for "[a]ny and all accountant work papers, files, correspondence and tax returns for the years 1990 through 1995 for Eric Steinberg, Raymond McDowell, [OMT] and [MSU]" were served on defendants' accountant; the documents requested under this subpoena were the same as the documents currently being requested by the IRS summonses.

Defendants claim that they complied with the grand jury subpoenas, providing more than two dozen boxes of documents to an IRS Special Agent on behalf of the grand jury in May and June 1996. Defendants further contend that, save for approximately five boxes of documents, the IRS Special Agent has retained these documents.

Defendants also allege that, on December 2, 1996, the Assistant United States Attorney, directing the grand jury, requested OMT's authorization to give the Examination Division of the IRS access to any and all records in the government's possession. On January 31, 1997, OMT, through counsel, declined to authorize the access requested by the Assistant United States Attorney.

On April 24, 1997, the IRS directed administrative summonses to Joan Steinberg for certain records. On or about April 25–28, 1997, the IRS directed identical summonses to defendants' counsel, to the Assistant United States Attorney directing the grand jury, and to defendants' minority shareholder.

In response to these summonses, on May 21, 1997, defendants, as well as Joan Steinberg, filed an action to quash the grand jury subpoenas served upon them. This action was styled *In the Matter of OMT Supermarket, Inc. and Middletown Supermarket, Inc.,* 97–MC–101 (E.D.Pa.). In this action, defendants and Mrs. Steinberg assigned as grounds for their motion: (1) that the IRS summonses sought disclosure of matters before the grand jury in violation of Federal Rule of Civil Procedure 6(e) and (2) that the IRS summonses were improper under 26 U.S.C. § 7602(c). On July 8, 1997, the IRS, through Revenue Agent Kelly, served notice that it was withdrawing all the summonses. On July 28, 1997, a stipulation of dismissal was entered in that case.

Based on this foregoing information with respect to the previous grand jury proceeding and civil action, defendants claim that this Court should dismiss the United States' instant Complaints. The defendants advance three arguments in support of its motion. First, defendants argue that the instant IRS summonses seek disclosure of matters currently before a grand jury in violation of Federal Rule of Criminal Procedure 6(e). Second, the defendants contend that instant summonses are improper because such administrative summonses cannot be issued when there has been a Department of Justice "referral" by the IRS. *See* 26 U.S.C. § 7602(c). Finally, defendants contend that this Court should not enforce the summonses because the IRS has issued them in bad faith. Defendants claim that they are issued in bad faith because they "could only be the product of the criminal investigation."

In response, the United States generally argues that defendants' contentions are without merit. Specifically, the United States argues that the information and documents requested by the summonses are not subject to the requirements of Federal Rule of Criminal Procedure 6(e). In addition, the United States submits that the summonses were not issued in violation of 26 U.S.C. § 7602(c) and

---

**5.** These subpoenas requested the following information:

All records, documents, and ledgers recording all shipments or, receipts for, and payments for, manufactures' cents-off coupons submitted for redemption to manufacturers, clearinghouses, or their agents, as well as statements and invoices received from manufacturers, clearinghouses, and their agents.

that the summonses were not issued in bad faith.[6]

For the following reasons, the Court will deny defendants' Motion and summarily enforce the IRS summonses that have been issued and served on defendants.

*II.  Discussion*

■ The Court has jurisdiction to enforce an IRS summons pursuant to 26 U.S.C. § 7402(b).  Summons Enforcement proceedings are summary in nature and "their sole purpose is to ensure that the IRS has issued the summons for a proper purpose and in good faith."  *United States v. Rockwell International*, 897 F.2d 1255, 1261 (3d Cir. 1990).

■ Petitioners must only satisfy the standards of good faith set out by the Supreme Court in *United States v. Powell*, 379 U.S. 48, 85 S.Ct. 248, 13 L.Ed.2d 112 (1964) in order to enforce an IRS summons.  That is, "that the investigation will be conducted pursuant to a legitimate purpose, that the inquiry may be relevant to the purpose, that the information sought is not already with the [IRS] Commissioner's possession and that the Administrative steps required by the [IRC] have been followed."  *Powell*, 379 U.S. at 57–58; *Rockwell*, 897 F.2d at 1262; *United States v. Garden State Nat'l Bank*, 607 F.2d 61, 67–69 (3d Cir.1979); *United States v. Wheaton*, 791 F.Supp. 103, 104 (D.N.J.

1992).  "Assertions in the affidavit of the investigative agent who is seeking enforcement that the *Powell* requirements are satisfied are sufficient to establish a prima facie case."  *Wheaton*, 791 F.Supp. at 104 (citation omitted).

■ In this case, the United States has established a prima facie case for enforcement of the summonses.  First, the Declaration of Revenue Agent Kelly establishes that the summonses were issued for a proper purpose, *i.e.*, for an examination of the taxpayers' federal tax liabilities for tax years 1990 through 1995.  (Kelly Decls. ¶¶ 2, 3, 5, 6, 8); *see Garden State*, 607 F.2d at 68 (holding that the IRS pursues a proper purpose under § 7602 when it seeks to determine the tax liability of the taxpayer).  Second, the information and documents sought by the summonses may be relevant to the IRS examination of the taxpayers.  Revenue Agent Kelly expects that the testimony, records, papers, and other data demanded in the summonses will reveal or lead to information regarding the correct tax liabilities of the taxpayers.  (Kelly Decls. ¶¶ 2, 3, 5, 8).  *Accord Rockwell*, 897 F.2d at 1263.  Third, Revenue Agent Kelly states that the information and documents are not already in the possession of the IRS.  (Kelly Decls. ¶ 12).

Finally, all of the administrative steps for the issuance and service of the summons have been followed.  Specifically, Revenue Agent Kelly was authorized to issue the summonses,[7] and the summonses were personally

---

**6.**  The United States has also submitted the declaration of Assistant United States Attorney Paul Sarmousakis to support its Complaints.  Mr. Sarmousakis is the AUSA who was directing the grand jury investigation referenced above.  In his declaration, Mr. Sarmousakis avers that the May 6, 1996 subpoenas issued to OMT and MSI sought certain information in connection with a mail fraud scheme.  (Sarmousakis Decl. ¶¶ 1, 2).  He also avers that, on July 22, 1996, the IRS made a referral to the Department of Justice for IRS Special Agents of the Criminal Investigation Division to participate in the grand jury investigation because of possible income tax violations.  *Id.* at ¶ 4.  OMT and MSI produced records, as stated above, in compliance with the subpoenas.  The records produced are original books and records of the corporations that were created prior to the issuance of the grand jury subpoenas.  *Id.* at ¶ 5.  These books and records produced have never been presented to a grand jury.  *Id.* at ¶ 6.

As of this date, there is no "Justice Department referral" in effect with respect to OMT and MSI.

*Id.* at ¶ 7.  More specifically, no recommendation has been made by the IRS to the Department of Justice for a grand jury investigation or criminal prosecution of the taxpayers for the years under investigation.  *Id.*  Moreover, the Department of Justice has not made any request under 26 U.S.C. § 6103(h)(3)(B) for the disclosure of any return or return information (as those terms are defined in the IRC 26 U.S.C. § 6103(b)) relating to the taxpayers.  *Id.*

Mr. Sarmousakis is still in possession of the corporate books and records of OMT and MSI, and they have never been turned over to the IRS Examination Division, nor does the Examination Division have access to these records.  *Id.* at ¶ 12.  Mr. Sarmousakis has retained these corporate records and books in connection with an ongoing grand jury investigation of an individual.  This person is not Eric Steinberg or Joan Steinberg.  *Id.* at ¶ 14.

**7.**  Revenue Agent Kelly is authorized to issue an IRS summons pursuant to the authority contained in § 7602.

served on OMT and MSI. (Kelly Decls. ¶¶ 1, 4). Accordingly, the United States has established its prima facie case for enforcement of the summonses at issue pursuant to the authorities cited above.

█ Once the existence of the *Powell* factors have been established by the petitioner, the burden shifts to, and falls heavily upon, the defendant to disprove the existence of a valid purpose or to show that enforcement of the summonses would otherwise be an abuse of the court's process. *Wheaton*, 791 F.Supp. at 105 (citing among other cases *Powell*, 379 U.S. at 58; *Rockwell*, 897 F.2d at 1262 ("an 'appropriate ground' for challenging the summons exists when the taxpayer disproves one of the four elements of the government's *Powell* showing, or otherwise demonstrates an abuse of the court's process")).

In this proceeding, defendants have challenged the IRS summonses by asserting that the information and documents sought are protected from disclosure under Rule 6(e) of the Federal Rules of Criminal Procedure, that the summonses were issued in violation of 26 U.S.C. § 7602, and that the summonses were issued in bad faith. However, defendants have failed to demonstrate, by affidavit or declaration, sufficient facts and legally cognizable grounds to oppose enforcement of the IRS summonses. Instead, they rely on a series of documents from which they make a series of incorrect assumptions to argue that the summonses were issued in bad faith and that Rule 6(e) and § 7602 apply to bar enforcement. This is neither evidence as required under this Court's Order, nor is it legally sufficient under case law to support defendants' opposition to the United States' Complaints. *See Moutevelis v. United States*, 727 F.2d 313, 315 (3d Cir.1984) (an evidentiary hearing is an IRS summons case "is required only when, judged by the standard of the Fed.R.Civ.P. 56(c), the petition

and affidavits in support and in opposition to it establish a material fact issue").

█ Legal conclusions, whether asserted in a brief, at oral argument, or in an answer or an affidavit, in opposition to the enforcement of an IRS summons are insufficient. *See Garden State*, 607 F.2d at 71. Moreover, "uncontested allegations in the Government's [complaint] and affidavit *must be accepted as admitted.* [Furthermore,] if at this stage the defendant cannot refute the government's *prima facie* [case under the criteria set forth in] *Powell ... or cannot factually support a proper affirmative defense, the district court should dispose of the proceeding on the papers before it and without an evidentiary hearing." Id.* (emphasis added).[8] In this case, the defendants have neither put in issue allegations of the Complaints, nor have they raised any valid affirmative defenses. Thus, an evidentiary hearing to determine the propriety of the summonses is not necessary.

First, the records and information sought by the IRS summonses are not covered by Rule 6(e) of the Federal Rules of Civil Procedure. In their Answer and Motion to Dismiss, the defendants baldly conclude that the records sought by the IRS summonses are insulated from subsequent disclosure under Fed. R.Crim.P. 6(e) because these records were previously produced in response to three grand jury subpoenas. (Answer ¶¶ 8, 14). However, defendants' unsupported assumptions are refuted by the declaration of Assistant United States Attorney Sarmousakis who caused the grand jury subpoenas to be issued in the first instance.[9]

█ Although defendants did produce certain records to the grand jury, these records are not covered by Rule 6(e) of the Federal Rules of Criminal Procedure, since they were created prior to the issuance of the grand jury subpoenas. (Sarmousakis Decl. ¶¶ 5–6).

---

**8.** Although the Third Circuit has stated that an evidentiary hearing is an integral part of IRS enforcement proceedings, the Circuit has also recognized " 'the realization that not every summons enforcement proceeding will require an evidentiary hearing. *Thus, if the person summoned neither puts in issue allegations of the complaint nor raises proper affirmative defenses, no evidentiary hearing will be required; the matter*

can be decided on the pleadings.' " *Garden State*, 607 F.2d at 70–71 & n. 16 (citing and quoting *United States v. McCarthy*, 514 F.2d 368, 373 (3d Cir.1975)).

**9.** In compliance with the grand jury subpoenas, defendants produced their original, pre-existing corporate records. (Sarmousakis Decl. ¶ 5).

Indeed, it has been well-established in this Circuit for over 14 years that if documents exist independently of the grand jury process, they are not matters occurring before the grand jury for purposes of Rule 6(e). *See In re Grand Jury Matter (Garden Court Nursing Home)*, 697 F.2d 511, 513 (3d Cir. 1983).

■ Furthermore, merely because a grand jury subpoenas documents, that fact alone does not subject the documents to Rule 6(e). *In re Grand Jury Investigation*, 630 F.2d 996, 1000 (3d Cir.1980); *see also Garden Court Nursing Home*, 697 F.2d at 513 (citations omitted). As explained by the Third Circuit in *In re Grand Jury Investigation:*

> Rule 6(e) shields solely "matters occurring before the grand jury." It is designed to protect from disclosure only the essence of what takes place in the grand jury room, in order to preserve the freedom and integrity of the deliberative process. *See, e.g., United States v. Procter & Gamble*, 356 U.S. 677, 681, 78 S.Ct. 983, 985, 2 L.Ed.2d 1077 (1958); *United States v. Rose*, 215 F.2d 617, 628–29 (3d Cir.1954). The Rule is not intended "to foreclose from all future revelation to proper authorities the same information or documents which were presented to the grand jury." *United States v. Interstate Dress Carriers, Inc.*, 280 F.2d 52, 54 (2d Cir.1960). The mere fact that a particular document is reviewed by a grand jury does not convert it into a "matter occurring before the grand jury" within the meaning of Rule 6(e). Documents such as business records sought ... here are created for purposes independent of grand jury investigations, and such records have many legitimate uses unrelated to the substance of grand jury proceedings.

> \* \* \* \* \* \*

> [W]hen testimony or data is sought for its own sake—for its intrinsic value in the furtherance of a lawful investigation—rather than to learn what took place before the grand jury, it is not a valid defense to disclosure that the same information was revealed to a grand jury or that the same documents had been, or were presently being, examined by a grand jury. (citation omitted).

> \* \* \* \* \* \*

The district court erred in assuming that Rule 6(e) automatically controlled .... "If the reasons for maintaining secrecy do not apply at all in a given situation, or apply to only an insignificant degree, that party seeking disclosure should not be required to demonstrate a large compelling need." *U.S. Industries, Inc. v. United States District Court*, 345 F.2d 18 (9th Cir.1965). In this instance, where the documents are sought for use in an investigation into a different subject than the matter before the grand jury, the party objecting to production must first prove that the policy of grand jury secrecy would be jeopardized. Otherwise, the request for access is not governed by Rule 6(e).

*In re Grand Jury Investigation*, 630 F.2d at 1000–01. *See also United States v. Dynavac, Inc.*, 6 F.3d 1407 (9th Cir.1993) (applying the principles cited in *In re Grand Jury Investigation* and enforcing IRS summonses issued in a civil tax examination for pre-existing corporate business records that were the subject of a grand jury subpoena; holding that "the disclosure of business records independently generated and sought for legitimate purposes, would not 'seriously compromise secrecy of the grand jury's deliberations' ").

■ Applying these Rule 6(e) principles, the Court finds that Rule 6(e) of the Federal Rules of Criminal Procedure does not prevent disclosure of the information and documents sought in the instant IRS summonses. In this case, the IRS examination Division is properly seeking to ascertain the taxpayers' correct tax liabilities for tax years 1990 through 1995. (Kelly Decls. ¶¶ 3, 8). The grand jury investigation involved a mail fraud scheme. (Sarmousakis Decl. ¶ 3). Thus, the civil examination is completely unrelated to the grand jury proceeding. In addition, the books and records produced by the defendants have never been presented to the grand jury. These business records also predate the grand jury investigation and were independently generated by the defendants. In addition, the IRS has requested these documents for a legitimate purpose. Under these circumstances, the Court cannot find that the "integrity of the grand jury's deliberative process would ... be compro-

mised by [the documents'] disclosure." *Dynavac*, 6 F.3d at 1414 (citation omitted). Thus, Rule 6(e) does not prevent disclosure of the information and documents sought by the IRS summonses.

■ The express language of § 7602(c) of Title 26 of the United States Code also does not forbid the issuance or enforcement of the instant IRS summonses.[10] As stated above, defendants argue, without any factual support, that the instant IRS summonses have been improperly issued in violation of § 7602(c) because "a criminal investigation is in effect with respect to the taxpayers, whether as a result of a 'Justice Department referral' or otherwise . . . ." (Answer ¶ 9). This argument is simply without merit.

Defendants' argument is not supported by, and is actually contrary to, the facts. First, OMT, MSI and the Steinbergs are not the target of a grand jury investigation. (Sarmousakis Decl. ¶¶ 7, 14). Second, none of the events which would constitute a "Justice Department referral" have occurred in this case. Indeed, there has been no "Justice Department referral" of the case, within the meaning of 26 U.S.C. § 7602(c)(2). *See* 26 U.S.C. § 7602(c)(2); Kelly Decls. ¶ 4; Sarmousakis Decl. ¶ 7. Third, no recommendation has even been made by the IRS to the Department of Justice for a grand jury investigation or criminal prosecution of OMT or MSI. *Id.* Moreover, the Department of Justice has not made any request under 26 U.S.C. § 6103(h)(3)(B) for the disclosure of any return or return information (as those terms are defined in the Internal Revenue Code 26 U.S.C. § 6103(b)) relating to the taxpayers. *Id.* In sum, defendants have

failed to produce any evidence that the IRS summonses issued violate § 7602.

■ Finally, to the extent that defendants argue that the instant IRS summonses were issued in bad faith, the Court also rejects this argument. As an initial matter, the Court notes that defendants' bad faith argument is not entirely clear; however, even giving this argument its broadest meaning, the Court still finds it without merit. To begin, defendants' bad faith allegations, like the rest of its allegations, are not supported by any evidence but rather merely conclusory allegations. *See Garden State*, 607 F.2d at 71 (finding that the taxpayer must support his position and "factually oppose the Government's allegations by affidavit"). Indeed, it seems that defendants baldly argue that the IRS summonses were issued in bad faith merely because the information sought by the instant summonses had been the subject of early subpoenas from an unrelated, prior grand jury. However, as discussed above, this allegation is simply irrelevant to the instant proceeding. The Court simply cannot find that the IRS is acting in bad faith under these facts.[11]

To the extent that defendants rely on the circumstances of the prior civil proceeding in this District, in which defendants moved to quash prior IRS subpoenas, to support their position here, the Court finds that this prior civil proceeding is legally irrelevant to the issue of bad faith now before this Court. Indeed, the government avers that the summonses in that prior proceeding were only withdrawn because they should have been

---

**10.** If a "Justice Department referral" is in effect, a summons is not enforceable. 26.U.S.C. § 7602(c); *Pickel v. United States*, 746 F.2d 176, 183 & n. 10 (3d Cir.1984). Such a referral is defined in § 7602(c). The definition of a referral in § 7602(c) was intended to demarcate a "bright line" for the courts in determining whether a summons issued in aid of a particular investigation having criminal aspects was issued for a proper purpose. *Id.* Under § 7602(c), the IRS cannot issue administrative summonses to taxpayers after a referral has been made by the IRS to the Department of Justice.

**11.** It appears that defendants are attempting to make a bad faith argument where none exists. Under a typical bad faith argument, the taxpayer

will usually argue that the IRS is merely using its administrative, civil subpoena powers to gather information for an ongoing or imminent criminal prosecution. However, in these cases, the taxpayer must show that there has been a "Justice Department referral" or, at a minimum, that an IRS agent has at least "recommended" prosecution to his supervisors at the IRS. *See generally Garden State*, 607 F.2d 61. In this case, as set forth above, there has not been a "Justice Department referral" or even a recommendation of criminal prosecution. Thus, defendants' bad faith argument simply has no support in the record, especially in light of the fact that the IRS has established a legitimate purpose for the issuance of the summonses.

addressed to and served on OMT and MSI. *See Dynavac,* 6 F.3d at 1415.

 Finally, the fact that the records remain in the hands of a third party, such as an Assistant United States Attorney, is not a sufficient ground to resist enforcement of the summonses. *See id.* at 1415 (rejecting argument that the summonses should be quashed for failure to serve the U.S. attorney who has actual custody of the records).

### III. Conclusion

Accordingly, for the foregoing reasons, this Court will deny defendants' motion to dismiss the complaints and summarily enforce the summonses at issue here.