

2007 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

9-20-2007

# USA v. Gippetti

Precedential or Non-Precedential: Non-Precedential

Docket No. 06-3801

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2007

Recommended Citation

"USA v. Gippetti" (2007). *2007 Decisions.* Paper 412.
http://digitalcommons.law.villanova.edu/thirdcircuit_2007/412

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova University School of Law Digital Repository. It has been accepted for inclusion in 2007 Decisions by an authorized administrator of Villanova University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

Case No: 06-3801

UNITED STATES OF AMERICA

v.

JEROME GIPPETTI

On Appeal from the United States District Court
for the District of New Jersey
District Court No.: 04-cv-00522
District Judge: The Honorable Katharine S. Hayden

Submitted Pursuant to Third Circuit L.A.R. 34.1(a)
September 19, 2007

Before: SLOVITER, SMITH, and GARTH, *Circuit Judges*

(Filed: September 20, 2007)

OPINION

SMITH, *Circuit Judge*.

This case involves a protracted struggle between a taxpayer, Jerome Gippetti, and

the Internal Revenue Service ("IRS") over IRS attempts to enforce a summons in its civil

investigation of Gippetti. A prior decision by this Court required the District Court to

make an express finding that Gippetti exercised possession or control over the records

now sought by the IRS. Although the District Court made such a finding, Gippetti argues

that this Court's order required the District Court to conduct further factfinding to determine whether Gippetti had control over the relevant records. More specifically, Gippetti contends that the District Court needed to conduct an evidentiary hearing at which Gippetti had the burden of proving his lack of possession and control of the records. We reject Gippetti's argument and will affirm the District Court order enforcing the IRS administrative summons.

I.

In February 2003, the IRS issued a summons to Jerome Gippetti as a result of its civil investigation into the 1999 and 2000 federal income tax liabilities of Gippetti and his late wife. The summons required that Gippetti appear before IRS revenue agent Karen Remington to provide testimony and produce records relating to, inter alia, his bank and credit card accounts with the Cayman National Bank, Ltd ("CNB"). In April 2004, after Gippetti failed to comply with the summons, the IRS initiated an enforcement action in the District Court to enforce the summons and the related subpoena. On August 27, 2004, the District Court entered an order that required, in relevant part, Gippetti to produce documents requested by the IRS that related to Gippetti's CNB bank and credit card accounts. Gippetti appealed the District Court's order to this Court, which vacated the order and remanded the case. The primary issue on this appeal is whether, on remand, the District Court complied with this Court's November 8, 2005 Not Precedential Opinion and Judgment that required the District Court to make "an express determination of possession or control" over the records the Government is seeking. *United States v.*

*Gippetti*, 153 Fed. Appx. 865, 868 (3d Cir. Nov. 8, 2005) ("*Gippetti I*").[1]  We noted that

"[t]here can be no question—and Gippetti does not seriously dispute—that most or all of

the CNB records at issue here exist, that the government knows they exist, and that they

are located at CNB." *Id*.

On remand, the District Court expressly found, in a June 22, 2006 enforcement

order, "that Gippetti has possession, custody or control of the summoned records

pertaining to his CNB bank account and MasterCard credit card accounts issued through

and by CNB." A3-4.  This statement occurred after a post-remand hearing where the

District Court stated that "I am making the finding that [Gippetti] does have possession,

custody and control sufficient to serve the purposes that are necessary so that he can

fulfill the requirements of this subpoena." A36.  Gippetti argues that this determination

did not comply with this Court's instructions in *Gippetti I*.  Instead, Gippetti interprets

*Gippetti I* to require a fresh evidentiary hearing to determine possession and control.[2]


II.

---

[1] In our previous opinion, we dispelled any Fifth Amendment concerns related to the
production of these documents.  *See Gippetti*, 153 Fed. Appx. at 869 (stating that "for
Gippetti to produce the CNB records would have no testimonial significance, and any
Fifth Amendment claim would be without merit").  Gippetti appealed this ruling, but the
Supreme Court denied certiorari on June 26, 2006.  *Gippetti v. U.S.,* __ U.S. __ , 126
S.Ct. 2932, 165 L.Ed.2d 977 (June 26, 2006).

[2] The District Court exercised jurisdiction over the IRS summons enforcement
proceedings pursuant to 26 U.S.C. §§ 7402(b) and 7604(a).  After remand, the District
Court entered a final order enforcing the IRS summons in part.  Gippetti filed a timely
notice of appeal from this order.  We therefore have jurisdiction pursuant to 28 U.S.C. §
1291.  *See Church of Scientology of Calif. v. United States*, 506 U.S. 9, 14-15 (1992).

We exercise plenary review over whether the District Court correctly interpreted the instructions of our prior opinion in *Gippetti I*, 153 Fed. Appx. at 869, where we "remanded for further proceedings consistent with this Opinion." *See Cooper Distrib. Co., Inc. v. Amana Refrigeration, Inc.*, 180 F.3d 542, 546 (3d Cir. 1999). Nowhere in our prior decision did we state that the District Court needed to hold an evidentiary hearing to fulfill the instructions of our prior opinion. Nonetheless, Gippetti alleges that *Gippetti I* implicitly, and Third Circuit precedent explicitly, mandated that the District Court on remand conduct factfinding through, for example, a hearing. Presumably, Gippetti would have presented evidence at this hearing to show that he did not have copies of the foreign bank account and credit card records and that CNB would not provide the records because, Gippetti argues, Cayman Island banking law precludes its banks from releasing such information unless the customer has consented to the disclosure. While Gippetti asked CNB for the information, he asserts that CNB did not view this action as consensual because the request was in response to the August 27, 2004 District Court order.[3] *See Gippetti I*, 153 Fed. Appx. at 867.

---

[3] After the District Court's post-remand June 22, 2006 enforcement order, Gippetti flew to CNB in the Cayman Islands in an apparent attempt to receive copies of the records. CNB refused to turn over these records. In a July 6, 2006 letter to Gippetti placed in the appendix by Gippetti, the bank stated that "[w]hen you made your previous request [in 2004] we considered carefully the documents which your US attorneys provided to us and in particular the Summons issued by the Internal Revenue Service and the subsequent Court Orders made against you, to which you referred in your letter." A77. CNB noted that "consent given under pain of penal sanction(s) does not constitute consent within the meaning" of Cayman Islands law. *Id.* CNB determined that "those circumstances had not changed and that [Gippetti's] request had not changed and that [Gippetti's] request was based on 'submission to force'." A78. These post-June 22, 2006

*Gippetti I* did not implicitly require a new evidentiary hearing to determine possession or control. We simply mandated that the District Court expressly rule on this issue. We concluded that this mandate was appropriate because a taxpayer faces the likelihood of a civil contempt action if the taxpayer refuses to produce the relevant records. Because the specter of civil contempt looms over non-complying taxpayers, we held that a District Court cannot make such a finding of possession and control implicitly. We are unconvinced that such a general directive to the District Court, without any particular requirement on how to make such an express determination, required a new hearing. This conclusion is buttressed by our statements in *Gippetti I* that the District Court's original enforcement order "necessarily contained an implied finding that any defense of lack of possession or control had not been sustained," *Id*. at 868, and that Gippetti "does not dispute, nor could he reasonably do so, that banks, including CNB, generate and, indeed, send to their customers monthly statements and the like and does not argue that, in 1999 and 2000, he did not, in fact, receive those statements and some or all of the other records sought by the government." *Id*. at 867.

Similarly, Third Circuit precedent does not require an evidentiary hearing under the circumstances of this case. To begin, a district court's summons enforcement

---

actions do not shed much light on this appeal, as our review is limited to the District Court's express determination on June 22, 2006 that Gippetti had possession and control over the records. Further, as noted by the Government, Gippetti's claim that he has tried to attain the records "has not been the subject of discovery, or of cross-examination, and it was not considered by the District Court in deciding whether to enforce the IRS summons." Gov't Br. 33.

proceedings "are designed to be summary in nature." *United States v. Rockwell Int'l*, 897 F.2d 1255, 1261 (3d Cir. 1990). The Supreme Court has stated that, before a district court can enforce an IRS summons, the Government must "show that the investigation will be conducted pursuant to a legitimate purpose, that the inquiry may be relevant to the purpose, that the information sought is not already within the Commissioner's possession, and that the administrative steps required by the Code have been followed." *United States v. Powell*, 379 U.S. 48, 57-58 (1964); *Rockwell Int'l*, 897 F.2d at 1261-62. Once the Government makes this four-step prima facie showing, the taxpayer still has the right to "challenge the summons on any appropriate ground." *Rockwell Int'l*, 897 F.2d at 1262 (quoting *Powell*, 379 U.S. at 58). The taxpayer bears the burden to show an appropriate ground. *See Powell*, 379 U.S. at 58; *United States v. Wheaton*, 791 F. Supp. 103, 105 (D.N.J. 1992); *United States v. Millstone Enters., Inc.*, 864 F.2d 21, 23 (3d Cir. 1988). The "lack of possession or control of records" is an appropriate ground to challenge a summons. *United States v. Rylander*, 460 U.S. 752, 757 (1983).

In the present case, Gippetti concedes that the Government has met its prima facie burden under *Powell*. However, Gippetti argues that he challenged the summons on an appropriate ground by raising the lack of possession or control as a valid affirmative defense. Because he raised this affirmative defense, Gippetti contends that, on remand, the District Court should have afforded him an evidentiary hearing. On the one hand, if "material Government allegations are factually refuted by the taxpayer, thus presenting a disputed factual issue, or where proper affirmative defenses … are factually supported by

6

the taxpayer's affidavits, the taxpayer is entitled to an evidentiary hearing." *United States v. Garden State Nat'l Bank*, 607 F.2d 61, 71 (3d Cir. 1979). On the other hand, mere allegations supporting an affirmative defense are "insufficient if conclusionary." *Id.*; *see also Alphin v. United States*, 809 F.2d 236, 238 (4th Cir. 1987) ("If the challenging party cannot refute the government's prima facie case or cannot factually support a proper affirmative defense, 'the district court should dispose of the proceeding on the papers before it and without an evidentiary hearing'." (citing *Garden State*, 607 F.2d at 71)). Put differently, the taxpayer's affidavit must "particularize those specific facts" that could lead a district court to infer that the taxpayer has rebutted the Government's prima facie case. *Garden State,* 607 F.2d at 71. Additionally, "[l]egal conclusions or mere memoranda of law will not suffice." *Id.* No evidentiary hearing is required if "the taxpayer cannot refute the government's prima facie *Powell* showing or cannot factually support a proper affirmative defense." *Id.*

Gippetti has not sufficiently raised the affirmative defense of non-possession and non-control to entitle him to an evidentiary hearing. Up until the District Court's post-remand enforcement order, Gippetti focused his efforts to defeat the enforcement of the summons on his Fifth Amendment right against self-incrimination. He did *not* assert a lack of possession or control specifically because of the manner in which Cayman Island banking laws define consent. On March 8, 2004, Gippetti's attorney submitted a letter to the District Court stating that Gippetti "will assert his constitutional privileges with respect to any testimony and production of documents sought by the Summons." A52.

7

Gippetti's attorney sent another letter three days later, which again focused only on the right against self-incrimination. A53. In a letter dated March 25, 2004, Gippetti's attorney again emphasized Gippetti's right against self-incrimination as to producing the CNB records. A55-58. On April 23, 2004, Gippetti submitted an affidavit in support of his motion to quash the IRS summons. With respect to the CNB records, Gippetti stated that he did "not possess any documents pertaining to [the CNB] accounts…." A173.

Gippetti also raised a Fifth Amendment self-incrimination objection to the record production of those and other records sought by the IRS. A171-77. Four days earlier, Gippetti's Certified Personal Accountant submitted an affidavit that repeatedly noted that he had never seen any of the CNB records and had no knowledge of their existence. A182-87. *Gippetti I* rejected Gippetti's Fifth Amendment arguments. *Gippetti*, 153 Fed. Appx. at 869. Once we separate Gippetti's Fifth Amendment arguments from his contentions regarding a lack of possession or control, we fail to see how these affidavits amount to anything more than the non-particularized facts and conclusory statements that, under *Garden State*, do not require an evidentiary hearing. *See Garden State*, 607 F.2d at 71.

In light of this conclusion, we agree with the Government that a taxpayer cannot "refuse to come forward with evidence in the District Court to rebut the Government's *prima facie* case, improperly claiming a privilege against self-incrimination under the Fifth Amendment, and then, when that claim is rejected … demand another chance to meet his evidentiary burden." Gov't Br. 26.

8

In sum, we instructed the District Court to make an express determination as to

Gippetti's possession or control over the CNB records. It made such a determination.

Failing to find any error in the District Court's proceedings conducted on remand, and

because the District Court's determination is not clearly erroneous, we will therefore

*affirm* the judgment of the District Court.[4]

---

[4] We note that, while Gippetti did not meet his affirmative defense burden to contest the Government's prima facie *Powell* showing, he still has the opportunity to allege a current lack of possession or control if the Government pursues civil contempt proceedings. As the Supreme Court has instructed, "[i]n a civil contempt proceeding … a defendant may assert a *present* inability to comply with the order in question. While the court is bound by the enforcement order, it will not be blind to evidence that compliance is now factually impossible. Where compliance is impossible, neither the moving party nor the court has any reason to proceed with the civil contempt action." *Rylander*, 460 U.S. at 758.